**In re Frederick C. STURM, t/a Legal Insurance, Legal Associates, Judicare, Advanced Legal Systems, Debtor.**

**James J. O'CONNELL, Esquire, Interim Trustee, Plaintiff,**

**v.**

**CONTINENTAL BANK, Defendant,**

**and**

**Legis, Inc., Intervening Defendant.**

**Bankruptcy No. 81–05108K.**

**Adv. No. 82–0665K.**

United States Bankruptcy Court, E. D. Pennsylvania.

May 12, 1982.

Bankr. 631 (Bkrtcy.E.D.Pa.1982).

James J. O'Connell, Philadelphia, Pa., trustee/plaintiff.

Arthur Konow, Philadelphia, Pa., for Continental Bank.

Edward J. DiDonato, Philadelphia, Pa., for trustee/plaintiff.

Edward Cohen, Philadelphia, Pa., for debtor.

Pace Reich, Philadelphia, Pa., for Legis, Inc. and Legal Protection Systems, Inc./intervening defendant.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

This case reaches the Court on a complaint for a preliminary injunction filed by the trustee. The trustee sought to impose an injunction to prevent transfers from a bank account in Continental Bank under the name of Legis, Inc. The trustee alleged that these funds were the property of the debtor, Frederick C. Sturm, III. The Court entered a Temporary Restraining Order on March 19, 1982, after a hearing at which counsel for Legis appeared. Subsequently, Legis acquired new counsel and vigorously contested the imposition of an injunction. The trustee filed a complaint to pierce the corporate veil of Legis, Inc., alleging that Legis was a mere sham and the alter ego of the debtor. Both of these matters were heard together and testimony was taken over a period of several days. During the course of this proceeding, two (2) motions to intervene in the action were granted. At the conclusion of the testimony, the Court held the case under advisement, pending the outcome of settlement negotiations. No settlement agreement was filed, therefore, it became necessary for the Court to render a prompt decision. The preliminary injunction was imposed by Order of this Court on April 12, 1982. This Opinion is being filed in support of the Order. Furthermore, this Opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure and Rule 65(d) of the Federal Rules of Civil Procedure.

## I. FINDINGS OF FACT

1. On or about December 9, 1981, Frederick C. Sturm, III, filed the above-captioned voluntary petition under Chapter 11 of the Bankruptcy Code. Title 11 U.S.C. § 101 et seq.

2. Plaintiff, James J. O'Connell, Esquire, is the Interim Trustee in the above-captioned Chapter 7 proceeding, having been appointed by Order of the Court on February 16, 1982. This was subsequent to the conversion of the case to Chapter 7.

3. Defendant, Legis, Inc., is a Pennsylvania corporation which maintains its principal place of business at 330 Spruce Street, Philadelphia, Pennsylvania.

4. Legis maintains a bank account (Account Number 44–1–754–9) at Continental Bank.

5. Upon complaint of the trustee (Adversary Number 82–0665K) this Court entered a Temporary Restraining Order on March 19, 1982, and a Preliminary Injunction on April 12, 1982, placing the approximately $11,659.69 in the Continental Bank Account in suspense.

6. On March 29, 1982, the trustee filed a complaint (Adversary Number 82–0764K) alleging that Legis, Inc., and Legal Protection Systems are controlled by and are instrumentalities of the debtor, Frederick C. Sturm, III.

7. The complaint (Adversary Number 82–0764) seeks to piece the corporate veil of Legis, Inc. and prays for an order of turnover of all funds and assets in the possession of defendants, Legis, Inc. and Legal Protection Systems.

8. The trustee has requested relevant bank data from Continental Bank but presently has not received such information.

9. The trustee has requested cancelled checks from the Legis, Inc. account but presently has not received them from Continental Bank. The delay results from the fact that batches of microfiche must be searched by hand.

10. Data from Central Penn Bank, the former depository of the defendants, has not yet been turned over to the trustee.

11. Debtor's premises at 330 Spruce Street, Philadelphia, Pennsylvania, has been inspected by the trustee and members of his staff.

12. The trustee's investigation failed to discover checkbooks for Legal Insurance, Inc. or Legal Protection Systems at 330 Spruce Street.

13. Bank statements and cancelled checks of Legis, Inc. are missing from that location.

14. Approximately 65 out of 500 checks, or at least 13% of all Legal Protection System's cancelled checks are missing from the checks found at 330 Spruce Street, Philadelphia, Pennsylvania.

15. The trustee has been unable to contact or locate Howard Shull, an alleged member of the board of directors of Legis, Inc., for examination.

16. The trustee wishes to examine Mr. Shull regarding the transfer of corporate funds to casinos, the whereabouts of assets of the estate, and the workings of Legis, Inc.

17. The trustee is unable to locate any deposit slips from any of the relevant bank accounts.

18. The trustee caused a subpoena requesting books and records of the corporate entities to be served upon Cheryl Staffin, Chairperson of Legis, Inc.

19. With one exception, no books or records were presented to the trustee pursuant to that subpoena. A single confirmation of deposit statement from Merrill Lynch was presented to the trustee on the date of the trial.

20. The trustee caused a subpoena requesting books and records of the debtor and related entities to be served upon Frederick C. Sturm, III. Almost no books and records were presented to the trustee pursuant to this subpoena.

21. The trustee's review of the debtor's bankruptcy schedules failed to disclose any interest of the debtor in bank accounts.

22. Bank statements mailed to the debtor were diverted by the postmaster to the trustee and indicated the existence of an account in the debtor's name at Merrill-Lynch and an account in the name of Legis, Inc. at Continental Bank. These accounts are the subject of litigation in this Court.

23. The investigation of the trustee failed to uncover any books of original entry of Legis, Inc. or Legal Protection Systems on the premises at 330 Spruce Street, Philadelphia, Pennsylvania.

24. The trustee testified that it is his belief that it is in the best interests of the estate to continue the status quo by a continuance of the preliminary injunction pending completion of his investigation.

25. There are no books or original entry nor cash receipts journal, cash disbursements journal, general journal, nor any ledger of Legis, Inc. in existence; with the sole exception of the corporate check book.

26. The chairperson and chief executive officer of Legis, Inc. is not aware of what happened to missing checks of the Legis, Inc. account.

27. Frederick C. Sturm, III, is the incorporator of Legal Insurance, Inc.

28. Sturm owned all stock of Legal Insurance, Inc. at its inception.

29. The stock of Legal Insurance, Inc. was issued in March of 1981 to Cheryl Staffin in consideration of certain research and investigative services performed on behalf of Frederick C. Sturm, III, in the case of *United States v. Frederick C. Sturm, III*, in the United States District Court for the Eastern District of Pennsylvania.

30. At the time of the transfer of ownership and the issuance of stock by Sturm to Staffin, both Sturm and Staffin lived at 330 Spruce Street, Philadelphia, Pennsylvania.

31. Checks were drawn on the Legal Insurance Account at Central-Penn National Bank to Western Savings Bank for the monthly mortgage on property owned by Sturm and his wife. This property was owned by Sturm and his wife as tenancy by the entireties and the address of the property is 2320 Parrish Street, Philadelphia, Pennsylvania.

32. Sturm testified that he rented the Parrish Street property to three (3) unnamed individuals who then paid rent to Legal Protection Systems. No receipts evidencing such rental payments have been produced. Nor has a lease been produced.

33. Checks were drawn on the Legal Insurance Account at Central-Penn to the Bureau of Accounts for alimony pendente lite payments to Andrea Sturm, wife of Frederick C. Sturm, III.

34. The alimony or support payments by Legal Insurance, Inc. to Andrea Sturm are not obligations of Legal Insurance, Inc.

35. Checks were drawn on the Legal Insurance account to F. Emmett Fitzpatrick, Esquire, for appeals fee and investigative costs incurred in a proceeding where he represented Sturm.

36. Legis, Inc. was incorporated on or about September 23, 1981, by Cheryl Staffin.

37. On or about December 10, 1981, 1,000 shares of stock in Legis, Inc. were issued to Cheryl Staffin.

38. No money was delivered to Legis, Inc. by Cheryl Staffin in exchange for the issuance of stock.

39. Staffin contributed the contracts of Legal Protection Systems to Legis, Inc. in exchange for the issuance of stock, although no documentation evidencing such transfer apparently exists. No such documentation was produced at the hearing to substantiate this claim.

40. Staffin is the chairman of the board and the chief executive officer of Legis, Inc.

41. Legal Protection Systems was a division of Legal Insurance, Inc. and is now a division of Legis, Inc. This relationship has never been fully or satisfactorily explained.

42. There was an attempt to incorporate Legal Protections Systems but the articles of incorporation were rejected and it has never been successfully incorporated.

43. Checks were drawn on the Legal Protection Systems, Inc. account at Central-Penn National Bank to the Philadelphia Family Court for support payments to Andrea Sturm, wife of Frederick C. Sturm, III.

44. Checks were drawn on the Legal Protection Systems, Inc. account to Prudential Insurance Company and Western Savings Bank in payment for the insurance coverage and the mortgage obligation on property owned by Frederick C. Sturm, III, and his wife at 2320 Parrish Street.

45. The check drawn on the Legal Protection Systems, Inc. account to Manges-Renzi, Inc. for Staffin's hospital expenses was a personal expense of Staffin.

46. Checks were drawn on the Legal Protection Systems, Inc. account to Postal Instant Press for services rendered in connection with Sturm's appeal in a criminal matter in which he was personally involved.

47. Checks were drawn on the Legal Protection Systems, Inc. account to Bamberger's as payment for the purchase of suits for Frederick C. Sturm, III.

48. A check drawn on the Legal Protection Systems, Inc. account in the amount of $200.00 to the United States Bankruptcy Court was undated but was processed on December 18, 1981.

49. The Court takes judicial notice that the filing fee for a Chapter 11 bankruptcy petition is $200.00 and concludes that this check was used to pay for the filing fee for Frederick C. Sturm, III's petition.

50. Staffin testified that she ratified or authorized all personal expenses of Sturm which were paid with corporate funds subsequent to the issuance of the checks.

51. There was never any written ratification of these checks which were issued for personal expenses.

52. Staffin's testimony that she authorized all personal expenses of Sturm lacks credi-

bility. Even if true, these actions show a complete disregard for the corporate entity.

53. Frederick C. Sturm, III, signed all checks of Legis, Legal Protection Systems and Legal Insurance.

54. Staffin reviewed the check book and had no questions or objections to the many checks that were issued.

55. Staffin also testified that she questioned all expenses over $50.00.

56. Staffin had previously testified at a Rule 205A examination conducted before this Court that she had never questioned Sturm's expenses.

57. Staffin also testified that expenses and disbursements were reviewed by her twice a month as chief executive officer.

58. Neither the chairperson of Legis, Inc. nor anyone else requires verification of expenses from Sturm prior to his issuance of a Legis, Inc. check in payment of such expenses.

59. Prior to reimbursement, there is no policy requiring any documentation to be submitted in support of the amount sought.

60. Staffin testified that she bore the responsibility for verifying that a Legis, Inc. or Legal Protection Systems reimbursement check was a proper business expense and, furthermore, that this responsibility had not been delegated to anyone.

61. Sturm testified that either Cheryl Staffin, Howard Shull, or Tom Licourish reviewed his expenses after the issuance of the check.

62. The whereabouts of Shull and Licourish are unknown and the trustee has been unable to subpoena them for examination.

63. The many inconsistencies in the testimony of Staffin and Sturm lead to the conclusion that the testimony regarding review of expenses is entirely untrustworthy.

64. As chairperson and chief executive officer of Legis, Inc., Cheryl Staffin spends only two (2) hours a week at the corporation's place of business.

65. Staffin testified that she reviewed expenses on the weekends or on a few occasions that Sturm brought her the checkbooks since July of 1981.

66. Sturm was a director of Legal Insurance, Inc. along with Cheryl Staffin and Howard Shull.

67. Sturm was in charge of the day-to-day operations of both Legal Protection Systems, Inc. and Legis, Inc.

68. All employees of any of these entities were accountable directly to Frederick C. Sturm, III.

69. Sturm manages and supervises five (5) fulltime employees and an undisclosed number of parttime employees of Legis, Inc. during the work week.

70. With the exception of a bank account opened only two (2) weeks before trial, Frederick C. Sturm, III, is the sole signatory on bank accounts of Legis, Inc. and all other related entities.

71. Frederick C. Sturm, III, was also the sole signatory on Legal Protection Systems, Inc. bank accounts.

72. Frederick C. Sturm, III, had maintained a residence at 330 Spruce Street.

73. Legis, Inc. is located and doing business at 330 Spruce Street. Legal Protection Systems, Inc. is located and doing business at 330 Spruce Street. Legal Insurance, Inc. is located at 330 Spruce Street.

74. The telephone lines for 330 Spruce Street, which number 12 or 13, are titled in the name of Frederick C. Sturm, III.

75. The lease for the premises known as 330 Spruce Street is in the name of Frederick C. Sturm, III.

76. Sturm lived rent free at 330 Spruce Street.

77. Initially, Legal Insurance, Inc. paid the rent for 330 Spruce Street. Subsequently, the rent was paid by Legal Protection Systems, Inc. This entity, Legal Protection Systems, Inc., has been a division of both Legal Insurance, Inc. and Legis, Inc. This relationship, of whatever nature it may be, has never been explained to the Court.

78. Legis, Inc., at some unknown date, commenced payment of both a monthly rental and the utilities on the premises at 330 Spruce Street.

79. Sturm has the use of a 1979 Cadillac and an Alpha Romeo which are owned by Legis, Inc.

80. Staffin formerly maintained her residence at 330 Spruce Street.

81. Frederick C. Sturm, III, and Cheryl Staffin are both currently residing at 225 South 18th Street, Philadelphia, Pennsylvania.

82. The testimony of Staffin as to authorization of Sturm's expenses is not credible, in light of the minimal amount of time she devotes to the business and her close relationship with Sturm. Furthermore, there is the fact that no written authorization or ratification presently exists nor is there any evidence that such authorization or ratification ever existed.

83. Sturm and Staffin have failed to observe corporate formalities.

84. Sole ownership of all stock in Legal Insurance, Inc. and Legis, Inc. has been held by either Cheryl Staffin or Frederick C. Sturm, III.

85. There is a shocking absence of corporate records.

86. There is a dissipation and diversion of corporate funds by the controlling entity, Frederick C. Sturm, III. This activity can only be to the detriment of both corporate creditors and creditors of the bankruptcy estate.

87. Frederick C. Sturm, III, is in complete control of the defendant, Legis, Inc.

88. Frederick C. Sturm, III, has apparently used the assets of Legis, Inc. completely as his own.

89. Frederick C. Sturm, III, seems to have attempted to conceal assets, which properly are property of the bankruptcy estate, in Legis, Inc.

## II. CONCLUSIONS OF LAW

The Court will enter an order continuing the preliminary injunction pending the completion of the trustee's investigation and disposition of the trustee's complaint. The trustee has raised serious allegations concerning the conduct of this debtor and the very existence of Legis, Inc. The evidence presented at the hearings has made it apparent to the Court that Legis, as a corporation, has not had a separate existence from the debtor. The evidence, however, is not complete. The trustee, therefore, will be ordered to continue his investigation and will be directed to file a report with the Court within forty-five (45) days.

The trustee's complaint (Adversary Number 82–0764K) will be held in abeyance pending the filing of the trustee's report. The Court has also requested counsel to file briefs or memoranda of law on the issues raised by the trustee in his complaint. When these documents are all available to the Court, a decision will be rendered on those issues.

This matter came before the Court on an expedited basis because of the time constraints imposed by the Federal Rules of Civil Procedure on injunctive proceedings. There has not been an opportunity for orderly litigation. If additional testimony should prove necessary, any party may file an application to reopen the proceeding for the purpose of placing additional evidence before the Court.

The Court will continue the injunction as regards the Continental Bank account. A decision on the final disposition of these funds will be rendered contemporaneously with the decision on the trustee's complaint. The Court is compelled to enter this injunction because of the lack of credibility and trustworthiness demonstrated by Sturm and Staffin, the principals of Legis. If the injunction were dissolved, the Court is certain that these funds would be immediately dissipated. If a subsequent decision were rendered in favor of the trustee, he would have no means of recovering these funds.

In conclusion, the Court will enter an Order continuing the preliminary injunction, directing the trustee to continue his investigation and requiring the trustee to file a written report within forty-five (45) days.